IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| COATS, ROSE, YALE, RYMAN & LEE, P.C., | § § § | |
| Plaintiff, | § § | Civil Action No. 3:11-CV-0642-D |
| VS. | § § | |
| NAVIGATORS SPECIALTY INSURANCE COMPANY, | § § § | |
| Defendant. | § § | |

MEMORANDUM OPINION
AND ORDER

The question presented is whether there is a conflict of interest between an insurance company and its insured that supersedes the insurance company's contractual right to select counsel to defend the insured in a state-court legal malpractice suit. Concluding that there is no conflict, the court upholds the insurance company's contractual right to select the insured's counsel.

I

This is a diversity action brought by plaintiff Coats, Rose, Yale, Ryman & Lee, P.C. ("Coats"), a law firm insured under a professional liability insurance policy ("Policy") issued by defendant Navigators Specialty Insurance Company ("Navigators"). Coats sues seeking a declaratory judgment that Navigators is required to pay for attorney's fees and expenses incurred in the defense of a state-court malpractice action against Coats (the "Underlying Litigation"). Coats moves for partial summary judgment establishing that there is a conflict

of interest that abrogates Navigators' contractual right to select counsel to defend Coats in the Underlying Litigation. Navigators has filed a cross-motion for summary judgment seeking a declaration that it has the exclusive right to select Coats's counsel in the Underlying Litigation.

The facts are substantially undisputed.[1] Coats has been sued in the Underlying Litigation by its former clients ("Malpractice Plaintiffs"), who allege malpractice and breach of fiduciary duty and seek a declaratory judgment. The Malpractice Plaintiffs seek compensatory and special damages, including forfeiture of all attorney's fees previously paid, and costs.

Coats tendered the suit to Navigators, who agreed to provide a defense under a reservation of rights. The Policy provides that Navigators has the right to defend Coats in suits covered by the Policy, which includes the right to select defense counsel.[2] Coats asserted that any attorney whom Navigators selected would have a conflict of interest, and Coats hired counsel to defend it in the Underlying Litigation. Navigators maintains that there is no conflict of interest, and it has therefore refused Coats's requests to pay attorney's fees incurred by Coats's independently-retained attorney.

Because the cross-motions for summary judgment effectively present the same

---

[1] In deciding these motions, the court relies on the parties' June 28, 2011 stipulation of facts.

[2] The parties do not dispute that the Policy gives Navigators this right. *See* D. App. 6 ("[Navigators] shall have the right to appoint counsel and to make such investigation and defense of a claim as is deemed necessary by the Company.").

question, the court considers the motions together.

II

"Whether an insurer has the right to conduct its insured's defense is a matter of contract." *N. County Mut. Ins. Co. v. Davalos*, 140 S.W.3d 685, 688 (Tex. 2004). "Under certain circumstances, however, an insurer may not insist upon its contractual right to control the defense." *Id.* One such circumstance is when an insurer makes a reservation of rights which, under Texas Law, creates a "potential conflict of interest." *Id.* at 689.[3] Such reservations create an actual conflict of interest "when the facts to be adjudicated in the liability lawsuit are the same facts upon which coverage depends." *Id.*; *see also Rx.com, Inc. v. Hartford Fire Ins. Co.*, 426 F.Supp.2d 546, 559 (S.D. Tex. 2006) ("A conflict of interest does not arise unless the outcome of the coverage issue can be controlled by counsel retained by the insurer for the defense of the underlying claim."). In other words, if the attorney appointed by the insurance company would have an incentive to act for the insurance company's interest rather than the insured's interest, and therefore deprive the insured of its right to "independent counsel," a conflict of interest exists triggering the insured's right to select counsel. *Id.* "This rule allows insurers to control costs while permitting insureds to protect themselves from an insurer-hired attorney who may be tempted to develop facts or

---

[3]The parties dispute whether an "actual" or only a "potential" conflict of interest is required to trigger the insured's right to select independent counsel. The court holds that a *potential* conflict of interest is not sufficient. *Davalos* makes clear that a reservation of rights only creates a "potential" conflict of interest, and that this potentiality alone does not entitle the insured to select counsel in the underlying suit. *See Davalos*, 140 S.W.3d at 689.

legal strategy that could ultimately support the insurer's position that the underlying lawsuit fits within a policy exclusion." *Rx.com*, 426 F.Supp.2d at 559-60 (citing *Hous. Auth. v. Northland Ins. Co.*, 333 F.Supp.2d 595, 601 (N.D. Tex. 2004) (Lindsay, J.)). When a conflict of interest exists, the insurer "may not insist upon its contractual right to control the defense." *Davalos*, 140 S.W.3d at 688. But "every disagreement" between the insurance company and the client "about how the defense should be conducted cannot amount to a conflict of interest." *Id.* at 689 (holding that disagreement over venue did not create conflict of interest).

III

Coats relies on several arguments to contend that an attorney selected by Navigators would have a conflict of interest. Navigators disputes each argument.

A

Coats maintains that, although Navigators has yet to reserve its rights for claims arising from any dishonest, intentionally wrongful, fraudulent, criminal, or malicious actions, Navigators' ability to do so in the future creates a conflict of interest.[4] In the Underlying Litigation, the Malpractice Plaintiffs assert that Coats engaged in fraudulent billing practices. Coats maintains that, if Navigators is able later to reserve its rights related to claims based on fraud, an attorney whom Navigators chooses would have an incentive to steer judgment

---

[4]Coats initially asserted that Navigators had already reserved its rights arising from fraudulent or dishonest conduct, but it later conceded that Navigators had not done so. Navigators' third reservation of rights stated that it is "*not now* reserving its right based on the Policy's [dishonesty exclusion]." D. App. 115-16 (emphasis added).

toward a finding of a fraud, rather than mere negligence, thus creating a conflict of interest. Navigators responds that it "has not and will not ever reserve its right to deny coverage for any claim in the [Underlying Litigation] based on the Policy's dishonesty exclusion." D. Reply Br. 7. The court therefore holds that Coats has failed to establish that there is a conflict of interest based on the possibility that Navigators might reserve rights under the Policy's dishonesty exclusion, because Navigators has expressly disclaimed such rights under the Policy.

B

Coats next maintains that a conflict of interest exists because the Policy covers compensatory damages but not the return of fees, and that an attorney chosen by Navigators will be able to steer any damage award toward the return of fees so that the award is not covered by the Policy.[5]

Coats cites examples of various ways that an attorney appointed by Navigators could steer the damages awarded in the case so that they are not covered by the Policy. Coats contends, for example, that the attorney could fight vigorously against factual findings that

---

[5] The parties do not dispute that the Policy covers compensatory damages but not the return of fees. Coats maintains, however, that a return of fees award is only available for breach of fiduciary duty and not for malpractice, which would give an attorney chosen by Navigators an incentive to allow a finding of liability on the breach of fiduciary duty claim. The court disagrees. Under Texas law, although a return of fees award is allowed for malpractice, the award is limited to the fees incurred due to the defendant's negligence rather than, as is the case for breach of fiduciary duty, all of the fees paid. *See Akin, Gump, Strauss, Hauer & Feld, LLP v. Nat'l Dev. & Research Corp.,* 299 S.W.3d 106, 121-22 (Tex. 2009). More important, as discussed *infra*, the return of fees award does not bear on whether a conflict of interest exists.

would result in compensatory damages—such as a finding that Coats promised the Malpractice Plaintiffs that the experts hired would perform their work within a reasonable budget—while conceding other factual findings that would lead to a return of fees award—such as that the fees Coats charged the Malpractice Plaintiffs were excessive. Navigators contends that this does not create a conflict of interest because any concession of facts that would tend to establish liability for either claim would increase the likelihood of compensatory damages that Navigators would be obligated as insurer to pay on Coats's behalf.

   The court agrees with Navigators. Because the Policy covers compensatory damages resulting from both legal malpractice and breach of fiduciary duty, Navigators has no incentive to concede any facts that tend to prove liability on either basis. This distinguishes the Underlying Litigation and the positions of Coats and Navigators, on the one hand, from the paradigmatic conflict of interest between an insurer and the insured, on the other hand, where the facts to be adjudicated in the underlying suit are the same facts on which coverage depends. *See, e.g., Hous. Auth.*, 333 F.Supp.2d at 601 (finding conflict of interest where insurance company reserved its right under policy not to cover fraudulent or willful violations of a statute, and underlying claim alleged willful violation of federal anti-discrimination statute). If the facts in the Underlying Litigation establish liability on either claim, Navigators will be required to pay all of the compensatory damages awarded, up to Policy limits. Navigators therefore has the incentive to vigorously contest liability on both claims.

Coverage under the Policy of compensatory damages, but not of return of fees, would only appear to create a conflict of interest if a return of fees award were *in lieu* of compensatory damages. But this is not how such damages are awarded. A return of fees award is not a substitute or an exclusive alternative to compensatory damages; the two types of damages are calculated differently and serve different purposes. *See Akin, Gump, Strauss, Hauer & Feld, LLP v. Nat'l Dev. & Research Corp.,* 299 S.W.3d 106, 122 (Tex. 2009) ("A negligence claim, unlike a fee forfeiture claim for breach of fiduciary duty, is about compensating an injured party."). Compensatory damages can be awarded up to the amount of harm to the plaintiff, while the return of fees can only be awarded up to the amount of fees paid by the plaintiff to the attorney.[6]  *See id.* (citing Thomas D. Morgan, Lawyer Law: Comparing the ABA Model Rules and the ALI Restatement (Third) of the Law Governing Lawyers 98 (2005) ("A key distinction between fee forfeiture and the malpractice remedy is that the amount forfeited need have no relation to actual damages suffered by the client.") (emphasis omitted)); *see also* Restatement (Second) of Torts § 903 cmt. a (1977) ("When there has been harm only to the pecuniary interests of a person, compensatory damages are designed to place him in a position substantially equivalent in a pecuniary way to that which he would have occupied had no tort been committed."). Because the two types of damages are not substitutes for one another, an attorney chosen by Navigators has no incentive to favor a return of fees award over an award of compensatory damages and every incentive to

---

[6]The return of fees for a malpractice claim are calculated as compensatory damages. *See Akin, Gump,* 299 S.W.3d at 121-22.

contest liability altogether.

Even assuming, *arguendo*, that the amount of one type of damage award affects the amount of the other, it still is not in Navigators' interest for the attorney defending Coats to concede facts that would lead to a return of fees award; such a concession would acknowledge wrongdoing, which could increase the compensatory damage award.  Thus Navigators has little, if any, incentive to concede facts that tend to show liability on either basis, and has every incentive to defend vigorously liability claims asserted in the Underlying Litigation.  Because of this incentive, Coats will not be deprived of "independent counsel on any issue," and there is no conflict of interest that entitles Coats to select the attorney for the Underlying Litigation.  *See Davalos*, 140 S.W.3d at 689*; see also Williams v. Am. Country Ins. Co.*, 833 N.E.2d 971, 979 (Ill. App. 2005) ("The test of whether a conflict exists is if, in comparing the allegations of the complaint to the terms of the policy, the insurer's interests would be furthered by providing a less than vigorous defense to the allegations.").

C

Coats's final argument is that the declaratory judgment claim in the Underlying Litigation creates a conflict of interest.  The Policy does not cover, and Navigators reserved its rights with regard to, "costs arising from declaratory relief." D. App. 43.  Coats contends that this provides an incentive for an attorney selected by Navigators to litigate the Underlying Litigation in a manner that results in its being decided based on the declaratory judgment claim rather than on the malpractice or breach of fiduciary duty claim because the resulting damages would not be covered under the Policy.  Navigators responds that this

misrepresents the purpose and function of the declaratory judgment action in the Underlying Litigation.

Navigators' reservation of rights only disclaims "costs arising from declaratory relief" on the basis that there cannot be independent liability arising from declaratory relief. The declaratory judgment claim in the Underlying Litigation seeks a declaration as to the factual and legal basis for the malpractice and breach of fiduciary duty claims. Navigators therefore maintains that there is no incentive for an attorney whom it selects to do anything but vigorously defend the declaratory judgment claim because any declaratory relief granted would lead to liability under the malpractice or breach of fiduciary duty claim, both of which are at least partially covered under the Policy.

Coats has failed to establish that there is a conflict of interest triggered by Navigators' reservation of rights with respect to costs arising from declaratory relief. It is not possible for an attorney selected by Navigators to control a coverage issue by conceding any part of the declaratory judgment action. *See Davalos*, 140 S.W.3d at 689. Navigators has the same incentive as Coats does to contest the declaratory judgment action. The Malpractice Plaintiffs seek a declaration establishing the validity of many of the factual and legal issues underlying their malpractice and breach of fiduciary duty claims.[7] If the state court rules in

---

[7]The declaratory judgment claim in the Underlying Litigation asks the court to make twelve declarations, many of which directly bear on liability under the malpractice and breach of fiduciary duty claims. For example, the Malpractice Plaintiffs seek a declaratory judgment that "the Defendants' invoices submitted to Plaintiffs for the alleged professional services rendered and expenses incurred are not reasonable and necessary . . . [and] exceeded the reasonable expectations of Plaintiffs . . . [and] exceeded the authority of Plaintiffs." D.

the Malpractice Plaintiffs' favor, this would increase the likelihood, if not resolve definitively, Coats's liability on the malpractice and breach of fiduciary duty claims and, in turn, Navigators' obligation to pay under the Policy. As discussed *supra* at § II(B), Navigators and Coats both have the same incentive to defeat completely the malpractice and breach of fiduciary duty claims. Nor does Navigators prefer a finding of liability on one claim over the other, because the Policy covers compensatory damages for both claims. Because a declaratory judgment action cannot lead to independent liability but can only affect liability under the other two claims—both of which are equally covered by the Policy—the result of the declaratory judgment action has no bearing on the coverage issue. The court therefore holds that the declaratory judgment action in the Underlying Litigation does not create a conflict of interest that confers on Coats the right to select its counsel.

\* \* \*

For the reasons explained, Navigators' June 30, 2011 motion for partial summary judgment is granted. The court concludes that no conflict of interest exists that supersedes

---

App. 106. If the state court issued a declaratory judgment to that effect, it would be the basis for a malpractice finding, and, in conjunction with other facts, for a finding of breach of fiduciary duty.

Navigators' right to select defense counsel for Coats in the Underlying Litigation.

    **SO ORDERED.**

November 21, 2011.

_____
SIDNEY A. FITZWATER
CHIEF JUDGE
